# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 19-488


KITE BROS. LLC

VERSUS

TIMOTHY ALEXANDER AND

LISA ALEXANDER


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 89,985 A
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Shannon J. Gremillion, and John E. Conery, Judges.


**AFFIRMED.**

**Jack L. Simms, Jr.**
**Attorney at Law**
**P. O. Box 1554**
**Leesville, LA 71446**
**(337) 238-9393**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Kite Bros. LLC**

**Michael A. Smith, Jr.**
**Alvin C. Dowden, Jr.**
**Dowden & Smith, L.L.C.**
**116 E. Lula Street**
**Leesville, LA 71446**
**(337) 238-2800**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Timothy Alexander**
    **Lisa Alexander**

**GREMILLION, Judge.**

Kite Bros., LLC, appeals the judgment in favor of defendants, Timothy and Lisa Alexander, rejecting Kite Bros.' demands against defendants resulting from damage to a recreational vehicle (RV) that defendants traded in when they purchased a new RV. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL POSTURE

The Alexanders previously purchased two RVs from Kite Bros. prior to October 15, 2013, when they purchased a 2014 Torque RV (the Torque) from Kite Bros. and traded in their 2006 Fleetwood Gearbox fifth wheel "toy-hauler" RV (the Gearbox). The manner in which this deal was perfected is disputed by the parties. The Alexanders claim that the deal was discussed and perfected during a meeting in the office of Kite Bros.' manager, Mr. Robert Kite, on October 15, 2013. Mr. Kite, on the other hand, testified that he and Mr. Alexander discussed the purchase price of the Torque and the trade allowance on the Gearbox in a phone call on October 13, 2013. Kite Bros. allowed the Alexanders $25,495.00 for the trade-in. No one at Kite Bros. inspected the interior of the Gearbox prior to perfecting the transaction, according to Mr. Kite.

Robert Kite testified that he relied upon his prior dealings with the Alexanders and, thus, did not inspect the interior of the trailer. Mrs. Alexander testified that during their October 15 meeting, Mr. Kite and his son, Jeff, left her and her husband in his office while they inspected the trailer, and Mr. Alexander confirmed this in his testimony. Mrs. Alexander denied seeing either Robert or Jeff Kite enter the trailer; however, when he returned to his office, Robert Kite complimented her on how "new" looking she kept the interior. Mr. Alexander also confirmed this.

The Gearbox was not without flaws when the Alexanders traded it in. The awning had been torn off in a storm and there was damage around the fender wells.

Robert Kite requested that they file a claim with their insurer for replacement of the awning. The Alexanders agreed to do that, and their insurer, USAA, paid the claim.

The sale of the Torque was finalized by the execution of a "Retail Installment Sale Contract" between the Alexanders and Kite Bros. This contract provides that the Torque was sold "AS IS," with only the manufacturer's warranty. The contract requires the Alexanders to maintain property damage insurance on the Torque for the term of the contract, ten years. It obligates the Alexanders to pay the entire amount under the contract even if the Torque is damaged, destroyed, or missing. It provides for various remedies available to Kite Bros. should the Alexanders be delinquent in their payments or in outright default. The contract is silent on any warranties on the Gearbox.

After completing the paperwork, Kite Bros. personnel readied the Torque and the Alexanders moved their personal effects from the Gearbox into the Torque. Robert Kite entrusted the Alexanders with his credit card so they could fill the tank of the Torque's generator. They then returned the credit card and drove home, the Torque in tow.

In November 2013, Kite Bros. contacted Mrs. Alexander and advised her that the roof of the Gearbox had been damaged. The Alexanders went to the dealership and were shown an area where the membrane roof material had been peeled back a corner over the garage section of the trailer, beneath which was a "hole" in the roof deck. Mrs. Alexander testified that she did not think the damage she was shown could have developed during the month Kite Bros. had owned the Gearbox.

The manufacturer of the Gearbox, Fleetwood, had declared bankruptcy, according to Robert Kite. It took some months for Kite Bros. to obtain the parts needed to repair the awning. After those parts arrived in February 2014, the Gearbox

was moved into a garage to be repaired, and deterioration inside the Gearbox was discovered. Robert Kite contacted the Alexanders, who agreed to file a second claim with USAA. Mr. Kite testified that the Gearbox has been stored indoors since.

USAA paid a portion of the damages but denied others as resulting from lack of maintenance or wear and tear. The Alexanders denied any responsibility for the damage.

In July 2014, Kite Bros. filed their "Petition for Breach of Contract" against the Alexanders. The petition alleged that the Alexanders traded the Gearbox and that Kite Bros. fixed the trade-in value "solely on the defendants [sic] . . .description of the trade-in as having no leaks, rotten wood, water damage, and in good condition, never having a leak or being damaged in any manner." The petition further alleged that Kite Bros. inspected the Gearbox on two separate occasions and, despite that, did not discover that the Gearbox had been "leaking for a long time, had sustained water damage, and had deteriorated to the extent that is was a total loss[.]" The leaking was such, according to the petition, that it could not be detected by reasonable and simple inspection. It concluded with a prayer for adequate compensation, costs, and attorney fees.

The matter proceeded to trial in August 2018. The testimonies of the Alexanders and Robert Kite have already been discussed. The trial court also heard from Eyoul Slaydon. Mr. Slaydon is a friend of the Alexanders and went hunting with Mr. Alexander in Colorado on several occasions in the Gearbox. After the Alexanders traded the Gearbox, Mr. Slaydon considered purchasing it from Kite Bros. with full knowledge of the deterioration, which he thought he could repair. When Mr. Slaydon examined the trailer, it was sitting outside Kite Bros. Kite Bros.

offered to sell the Gearbox to Mr. Slaydon for $11,000.00, but he decided that it was too heavy for his truck.

Mr. Aaron Theall was offered by Kite Bros. as an expert in mobile home and recreational vehicle appraisal, damage assessment and causation, and repair. After questioning and traversal on Mr. Theall's qualification, the trial court ruled that no proper foundation had been laid to qualify him. Mr. Theall thereafter identified photographs he took of the Gearbox on June 2, 2016. These photographs show extensive deterioration of a large section of the roof, several feet in length rather than the corner of the roof shown to Mrs. Alexander. They also reflect extensive interior damage to the floor and walls in the area identified by Mr. Theall as the toy-hauler section. The exterior wall was buckled, about which no one testified.

The trial court took the matter under advisement and rendered written reasons for judgment in favor of the Alexanders. The trial court agreed with Kite Bros. that the claim did not lay in redhibition; a seller owes no warranty for defects known to the buyer or that should have been discovered by a reasonably prudent buyer. La.Civ.Code art. 2521. Kite Bros. is engaged in the business of selling recreational vehicles. Robert Kite testified that he did not inspect the interior of the Gearbox.

The general law of sales requires that a buyer be given a reasonable opportunity to inspect the thing to determine whether it conforms with the contract, even after delivery. La.Civ.Code art. 2604. The buyer can also reject a nonconforming thing within a reasonable time. La.Civ.Code art. 2605. The trial court found that Kite Bros. "had ample and reasonable time to inspect the 2006 Gearbox trailer."

The trial court further interpreted the contract's waiver of warranties and the "AS IS" provision against Kite Bros., who drafted the contract. Further, the contract

4

provided that it "contained the entire agreement" between the buyers (the Alexanders) and the seller (Kite Bros.), and any changes must have been reduced to writing. Because no writing altered the terms of the agreement, the contract provided no further remedy to Kite Bros.

## ASSIGNMENTS OF ERROR

Kite Bros. asserts that the following errors were committed by the trial court:

1) The trial Court erred in holding that plaintiff failed to carry its burden of proof that defendants breached the contract with plaintiff concerning the sale of the camper trailer, that is the subject of these proceedings.

2) The Trial Judge erred in the apparent misapplication of the laws and jurisprudence of the State relative to actions in redhibition to the laws relative to a breach of contract proceeding.

3) The Trial Judge erred in his interpretation of the applicable Codal Articles and Jurisprudence of this State, thus rendering a Judgment that is clearly wrong, and contrary to the law and evidence.

4) The Trial Judge erred in not allowing the expert testimony of Aaron Theall concerning causation of the damage to the defendants' trade-in trailer.

## ANALYSIS

*Redhibition*

The trial court found, and the parties agree, that this matter does not sound in redhibition. We agree. Sellers—in this case the Alexanders—do not warrant against defects in a thing, such as the Gearbox, that "were known to the buyer [Kite Bros.] at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." La.Civ.Code art. 2521. The trial court concluded that Kite Bros. should have discovered all defects in the Gearbox because it has been in the RV business for many years. We could not reverse on this finding.

Findings such as the existence of a redhibitory defect and whether the same should have been detected by a reasonably prudent buyer are findings of fact and are

reviewed under the manifest error standard. Under that standard, the issue is not whether the trial court was right or wrong, but whether its conclusions were reasonably supported by the whole record. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). In this case, the record supports the trial court's finding. Robert Kite testified that he did not inspect the Gearbox. The Alexanders testified that he did. Either way, redhibition would be precluded as a viable cause of action.

*Other remedies*

In addition to an action in redhibition, a buyer enjoys remedies in contract. Louisiana Civil Code Article 2524, although it appears in Chapter 9 of Title VII, which governs redhibition, affords the buyer additional warranties (emphasis added):

> The thing sold must be reasonably *fit for its ordinary use*.

> When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be *fit for the buyer's intended use or for his particular purpose.*

> If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.

Comment (b) provides:

> Under this article when the thing sold is not fit for its ordinary use, even though it is free from redhibitory defects, the buyer may seek dissolution of the sale and damages, or just damages, under the general rules of conventional obligations. The buyer's action in such cases is one for breach of contract and not the action arising from the warranty against redhibitory defects.

"Thus, it appears that the legislature intended to separate and categorize three different types of warranties applicable to sales rather than to have all such warranties defaulted into the category of the warranty against redhibitory defects."

*Cunard Lines Ltd. v. Datrex, Inc.*, 05-1171, pp. 6-7 (La.App. 3 Cir. 4/5/06), 926 So.2d 109, 114.

Clearly, Kite Bros. was not relying on the Alexanders' "skill or judgment in selecting" the Gearbox. La.Civ.Code art 2524. The Alexanders did not seek out a Gearbox for Kite Bros.; they had the Gearbox and were seeking to trade that particular Gearbox for an adjustment to the amount they ultimately had to pay for the Torque. Thus, the only remaining warranty available to Kite Bros. was that the Gearbox was unfit for ordinary use. The enforcement of that remedy lay in the "general rules of conventional obligations." *Id.*

*General law of sales provisions*

"When the thing the seller has delivered. . . is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations." La.Civ.Code art. 2529. Separate from claims in redhibition, the general law of sales gives a buyer a reasonable opportunity to inspect a thing. La.Civ.Code art. 2604. "A buyer may reject nonconforming things within a reasonable time." La.Civ.Code art. 2605. "A buyer's failure to make an effective rejection within a reasonable time shall be regarded as an acceptance of the things." *Id.* "Things do not conform to the contract when they are different from those selected by the buyer or are of a kind, quality, or quantity different from the one agreed." La.Civ.Code art. 2603.

The trial court found that Kite Bros. had a reasonable opportunity to discover the defects in the Gearbox. Kite Bros. argues that the defects were discovered within a reasonable time, that notice was properly given to the Alexanders, and that it operated in the belief that "the initially discovered nonconforming things would be fixed, or cured, since the defendants agreed to file an insurance claim, and a portion

7

of the claim was paid." Kite Bros. also makes much of the "existence of the damages, and the extent thereof, as shown in the photographs taken by Aaron Theall." In essence, Kite Bros. is arguing that the trial court's finding that it had a reasonable opportunity to inspect and discover the defects was wrong. This finding is one of fact and subject to the manifest error standard. *See Stobart*, 617 So.2d 880.

We find that the trial court's finding is reasonably supported by the record. Kite Bros. did not contact the Alexanders about the problem for a month. We are unable to reverse the trial court's finding; if the purpose of taking the Gearbox in trade was to sell it, as evidenced by the fact that Kite Bros. offered it to Mr. Slaydon, surely Kite Bros. would have incentive to get the Gearbox turned around and ready to sell as quickly as possible.

We find that the trial court properly applied Louisiana's law of sales in ruling in favor of the Alexanders. Assignments of error 1, 2, and 3 lack merit.

Kite Bros' final assignment of error complains of the trial court's refusal to allow Mr. Theall to testify as an expert. Louisiana Code of Evidence Article 702(A) provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.

8

"The decision to accept or reject a witness as an expert lies within the great discretion of the trial court and will not be overturned unless that discretion was abused." *State v. Eckert*, 17-848, p. 11 (La.App. 3 Cir. 5/2/18), 244 So.3d 551, 558, *writ denied*, 18-908 (La. 1/28/19), 262 So.3d 887.  The trial court found that Mr. Theall possessed significant experience in damage appraisal of RVs.  However, he received no formal education in that field and the methodology he employed in arriving at his opinions was not elicited from his testimony.  Further, the trial court found that no foundation had been laid to qualify Mr. Theall as an expert in the area of causation of the damage to the Gearbox.  In response to qualification and traversal of his expertise, Mr. Theall testified to his experience in estimating repair costs of damaged RVs during the years he managed a repair facility.  He is currently employed performing appraisals on RVs damaged in accidents for the purpose of determining whether they can be repaired and the approximate cost of repairing them, and he has done this for several years.  However, there was no testimony qualifying Mr. Theall in the area of differentiating certain types of damage from a causation perspective.

Further, Mr. Theall first examined the Gearbox in June of 2016, almost three years after the transaction at issue.  Mr. Theall identified the photographs taken during his inspection.  These showed extensive damage beyond anything any party testified to.  We find no error in not allowing Mr. Theall to render expert opinions on the issue of causation, not only because the trial court did not abuse its discretion in finding that his qualifications were not adequately established, but also because there is a serious question about the adequacy of the facts upon which such an opinion would be based.  *See* La.Code Evid. 702(A)(2).  It is far from certain that the damage depicted in the photographs, which were taken three years after the sale

and after the Gearbox was allowed to sit exposed outdoors for three or four months with a hole in its roof, existed at the time of the transaction. Indeed, no inspection of even a cursory nature could have failed to detect the buckling of the walls of the trailer. Anyone simply walking past the Gearbox would have noticed it.

This assignment of error lacks merit.

## CONCLUSION

Even a sophisticated buyer is given remedies under the law for deficiencies in its purchases. The availability of those remedies sometimes depends upon its actions. In the present case, Kite Bros. claims it performed no inspection of the Gearbox until a month after it purchased the Gearbox. The trial court determined that it did not discover the defects in a reasonable, timely fashion, and we find no error in this ruling. The trial court did not abuse its discretion in determining that Kite Bros. did not lay a proper foundation to qualify Mr. Theall as an expert witness in the field of RV damage causation.

The judgment of the trial court is affirmed. All costs of this appeal are taxed to plaintiff/appellant, Kite Bros. LLC.

**AFFIRMED.**